UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LUCIO B. RIVERA-AVILA,

Petitioner,

v.

SHAWN HATTON, Warden,

Respondent.

Case No. 16-cv-05879-YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Lucio B. Rivera Avila, a state prisoner currently incarcerated at the Correctional Training Facility, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2013 conviction and sentence rendered in the Contra Costa County Superior Court for second degree murder. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

**I.   BACKGROUND**

**A.   Factual Background**

The California Court of Appeal summarized the facts of Petitioner's offense as follows. This summary is presumed correct. *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> The charges arise out of the death of Shelly Baker. Defendant met Baker in November 2010, and paid her to have sex with him. In the early morning of December 7, 2010, defendant and Baker were observed arguing next to a truck in a parking lot. A witness saw defendant throw bags or a backpack at Baker. As Baker was picking up those items, defendant got into the truck. According to the witness, defendant's truck twice backed up and then accelerated forward to hit Baker. Upon the second collision, Baker yelled and was dragged under the truck.
>
> Defendant testified as follows regarding the incident. Baker came to his home on the night in question, where he did her laundry and made her food. During this time, Baker was drinking alcohol and smoking something that "smelled bad." Defendant asked her to have sex with him for money, but she refused. The two argued, and Baker's behavior became erratic. Defendant tried to drive Baker home, but as they were driving, Baker said she wanted to die and kill someone, and then grabbed the wheel. Defendant eventually pulled over, at which point Baker punched him, knocking off his

> glasses. Defendant removed Baker's bag from the car, and then tried to drive away while she was retrieving it. Defendant claimed he did not see Baker when he was driving away. He noticed his truck hit something, but he thought it was a bag of clothes or the curb. He also claimed he tried to brake but his foot slipped and he accidentally accelerated.
>
> The paramedics tried to revive Baker and transported her to a local hospital. An autopsy of Baker revealed extensive external injuries, crushing injuries to the scalp, partially collapsed lungs, a ruptured liver, and a cut spinal cord. A sample of Baker's blood taken after death tested at a 0.17 percent blood-alcohol level. A half-full bottle of vodka was found in Baker's purse. Drug screening also revealed Baker had been using methamphetamine, but that evidence was excluded based on a motion in limine by the prosecution.
>
> Defendant was apprehended a few hours after the incident when police found a truck matching the description of the suspect vehicle. When questioned, defendant denied being in an accident, did not reveal he had taken Baker to his home before the incident, and claimed he had picked her up at midnight and had her perform oral sex in his truck. Defendant also lied to the police about how many times he had been with Baker.
>
> At trial, the jury heard testimony from various acquaintances of defendant. Jineane Wagner, who defendant had also paid for sex, testified defendant had run over her leg with his car in 2008. Patty Heller testified defendant had paid her for sex on multiple occasions, and he was peaceful and polite. Defendant's ex-girlfriend, defendant's longtime friend, and defendant's neighbor also testified to his peaceful character. The jury also learned defendant had been convicted of assault with force likely to commit great bodily injury about 19 years prior.

*People v. Rivera-Avila*, No. A139344, 2015 WL 1455043, *1-2 (Cal. Ct. App. Mar. 27, 2015).

### B. Procedural History

#### 1. Conviction and Sentencing

On May 20, 2013, a Contra Costa County jury convicted Petitioner of second degree murder. 3CT 662. The jury also found true the special allegation that Petitioner used a deadly and dangerous weapon in the commission of the crime. 3CT 663. On July 16, 2013, the trial court sentenced Petitioner to a total term of sixteen years to life in prison. 3CT 669.

#### 2. Post-Conviction Appeals and Collateral Attacks

On direct appeal, the California Court of Appeal affirmed the judgment in an unpublished opinion issued on March 27, 2015. *Rivera-Avila*, 2015 WL 1455043, *8; Resp't Ex. 8. Petitioner had raised four claims, including that "the trial court erred by (1) admitting evidence of prior bad

2

acts, (2) excluding evidence of the victim's intoxication and mental health, (3) failing to investigate reports of juror intimidation, and (4) pressuring the jury to reach a verdict." *Id.* at *1.

On July 8, 2015, the California Supreme Court denied review. Resp't Ex. 10.

Thereafter, Petitioner filed a state habeas petition in the Contra Costa Superior Court, contending "that he never intended to strike the victim with his car, [and that] [r]ather, it was an accident and the evidence support[ed] such a claim." Dkt. 1 at 14. Petitioner further contended that he was "guilty of involuntary manslaughter and not murder." *Id.* On January 10, 2016, the state superior court denied the petition, stating that "habeas corpus cannot be used 'to test the sufficiency of the evidence to warrant the conviction of petitioner, a question properly addressed to a reviewing court on appeal.'" *Id.* (citing *Ex parte Bell*, 19 Cal. 2d 488, 506 (1942).) The state superior court added that "except for claims that fall within certain exceptions, claims that were made and rejected on appeal cannot be re-raised in a habeas corpus petition." *Id.* at 15. The state superior court determined that Petitioner's claims "d[id] not fall within any one of these stated exceptions to the general rule." *Id.* Nothing in the record indicates whether Petitioner pursued any other state habeas petitions in either the state appellate or supreme courts.

### 3. Federal Court Proceedings

On October 11, 2016, Petitioner filed the instant federal petition, in which he raises his due process claim that the trial court erred in failing to investigate reports of juror intimidation. Dkt. 1. On January 18, 2017, the Court issued an Order to Show Cause. Dkt. 12. Respondent has filed an Answer. Dkt. 16. Although Petitioner was given an opportunity to do so, he has not filed a Traverse. The matter is now fully briefed.

## II. LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

3

clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, and thus falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

4

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The last reasoned decision as to Petitioner's due process claim concerning potential juror intimidation is the California Court of Appeal's unpublished disposition issued on March 27, 2015. *Rivera-Avila*, 2015 WL 1455043, *5-6; Resp't Ex. 8. However, Respondent argues that Petitioner's aforementioned sole claim in this petition is procedurally defaulted because it was found to be forfeited by the state appellate court, which declined to reach the merits of this claim. Dkt. 16-1 at 8-12. Respondent further argues in the alternative that, even if the Court were to address the merits of the issue de novo, it should still deny habeas relief because: (1) the trial court's alleged failure to investigate the reports of juror intimidation did not violate due process; and (2) any alleged error had no substantial effect on the verdict. *Id.* at 12-17. Therefore, Court will first consider below whether Petitioner's claim is procedurally defaulted from federal habeas review.

## III. PROCEDURAL DEFAULT

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 728 (1991). Thus, where a state court's rejection of a claim rests upon an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993).

Here, Petitioner contends that the trial court violated his due process rights by failing to investigate reports that a juror was threatened by court spectators. Dkt. 1 at 5. Specifically, Petitioner argues that the trial court took no further action after being informed by the jury foreperson that certain court spectators told Juror No. 5, "You better find him guilty." *Id.* As

5

mentioned above, Respondent argues that because the last reasoned state court opinion applied a procedural bar in declining to address Petitioner's due process claim, no federal habeas relief is available on this claim. *See* Dkt. 16-1 at 8-12.

**A.  Background**

The following background of facts relating to Petitioner's due process claim is taken from the state appellate decision:

> The day after the case was submitted to the jury, the trial judge advised both parties of a communication from the jury foreperson. According to the court, the foreperson informed the bailiff that male relatives of Baker or court spectators told Juror No. 5 something to the effect of, "'You better find him guilty.'" The court also said the foreperson told the bailiff: "[N]obody felt threatened or the impression was nobody felt threatened and that she did not feel that was going to affect the jury's decision at all." The court then stated: "It happened yesterday. It's reported through a third party. It's not reported by a person who supposedly heard the statement." The court indicated it did not intend to do anything about the incident, but if the parties felt differently, the court was open to suggestions. Defense counsel stated he would have to think about it, but did not raise the issue again. The court took no further action.

*Rivera-Avila*, 2015 WL 1455043, *5.

**B.  Last Reasoned State Court Opinion**

The state appellate court found "unpersuasive" Petitioner's claim "that the trial court committed reversible error by failing to investigate reports a juror was threatened by court spectators." *Id.* The state appellate court concluded that, "[e]ven if the court should have investigated further," Petitioner "forfeited the issue by failing to request an inquiry or otherwise object . . . ." *Id.* The state appellate court stated as follows:

> When a court is put on notice improper external influences have been brought to bear on a juror, "it is the court's duty to make whatever inquiry is reasonably necessary to determine if the juror should be discharged and whether the impartiality of other jurors has been affected." (*People v. McNeal* (1979) 90 Cal. App. 3d 830, 839.) "Such an inquiry is central to maintaining the integrity of the jury system, and therefore is central to the criminal defendant's right to a fair trial." (*People v. Kaurish* (1990) 52 Cal. 3d 648, 694.) The decision whether to make such an inquiry rests within the sound discretion of the trial court. (*People v. Fuiava* (2012) 53 Cal. 4th 622, 702.) "The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial." (*People v. Ray* (1996) 13 Cal. 4th 313, 343.) "A hearing is required only where the court possesses information

6

which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his or her duties and would justify his or her removal from the case." (*People v. Bradford* (1997) 15 Cal. 4th 1229, 1348.)

A defendant may forfeit a claim of jury or spectator misconduct by failing to object below. For example, in *People v. Hinton* (2006) 37 Cal. 4th 839, 898, the trial court was informed the victim's mother said something to the effect of, " ' "Thank you, Jesus. Kill him," ' " in front of the jury after the verdict was announced. The trial court declined to investigate when the incident was brought to its attention during the penalty phase. Our Supreme Court affirmed because the defendant failed to request a curative admonition or an evidentiary hearing to determine whether the jury heard the spectator's comment. (*Ibid*.) In *People v. Williams* (2013) 58 Cal. 4th 197, 287-288, a spectator reported a juror may have been sleeping during trial. On appeal, the defendant challenged the trial court's failure to investigate. The challenge was rejected on the grounds defense counsel failed to object, expressly waived any defect, and affirmatively requested the procedure followed by trial court. (*Id*. at p. 289.) Likewise, in *People v. Burgener* (1986) 41 Cal. 3d 505, 521-522, the defendant forfeited his jury misconduct challenge where defense counsel urged the court not to investigate reports of juror intoxication because such an inquiry would "'destroy the jury.'" The court held the defendant's objection to an evidentiary hearing may have been tactically motivated, and his claim was better suited for a petition for habeas relief. (*Id*. at p. 522.)

Defendant argues these cases are distinguishable because they involve instances where the trial court failed to conduct an investigation to determine if there were facts showing misconduct had occurred. In this case, defendant argues, the trial court was aware of facts raising potential or actual jury misconduct, and thus had an independent duty to conduct an evidentiary hearing, regardless of whether counsel requested one. We agree not every incident involving jury misconduct requires further investigation. (*People v. Fuiava*, *supra*, 53 Cal. 4th at p. 702.) But waiver has been found even where the trial court was aware of facts raising a strong possibility of jury misconduct. For example, in *People v. Burgener*, the court affirmed despite finding the incidents reported to the court were sufficient to raise the possibility the juror in question was intoxicated during deliberations. (*People v. Burgener*, *supra*, 41 Cal. 3d at pp. 520-521.)

We conclude defendant forfeited his challenge concerning potential jury intimidation here. Although the trial court raised the issue with counsel while deliberations were ongoing, and indicated it was open to suggestions, defense counsel failed to request an evidentiary hearing, an admonition, or any type of corrective action. Nor did defendant move for a new trial after the jury returned a verdict. Moreover, based on the record before us, we cannot determine whether the interaction involving the court spectators resulted in any prejudice, especially since the trial court was informed no one felt threatened. To the extent defendant seeks to prove otherwise, his claim is better suited for a petition for habeas relief.

7

## C. Analysis

As stated above, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. In determining whether a state ruling rests on a state procedural rule, the federal habeas court presumes that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Specifically, in *Ylst*, the Supreme Court held that where the last reasoned opinion on a claim expressly imposes a procedural bar, it should be presumed that a later decision summarily rejecting the claim did not silently disregard the bar and consider the merits. *See id.* at 801-06 (1991); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996). Similarly, however, where the last reasoned opinion on the claim fairly appears to rest primarily upon federal law, it should be presumed that no procedural default has been invoked by a later unexplained order. *See Ylst*, 501 U.S. at 803. This "look through" presumption may only be rebutted by strong evidence to the contrary. *See id.* at 804.

Here, the Court "looks through" the state supreme court's unexplained denial of the petition for review, *see* Resp't Ex. 10, and turns to the state appellate court opinion to see if a state procedural default was imposed. *Id.*; *Thomas v. Lewis*, 945 F.2d 1119, 1122 (9th Cir. 1991). As indicated above, the state appellate court declined to reach the merits of his claim upon expressly concluding that Petitioner "forfeited his challenge concerning potential jury intimidation" and his right to raise this claim on appeal under California's contemporaneous objection rule. *Rivera-Avila*, 2015 WL 1455043, *5-6. Specifically, the court pointed out that "defense counsel failed to request an evidentiary hearing, an admonition, or any type of corrective action." *Id.* at *6. The court added that defense counsel did not move for a new trial after the jury returned a verdict. *Id.*

A petitioner who fails to observe a state's contemporaneous objection rules may not challenge the constitutionality of the conviction in federal court. *See Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition for procedural default where there was a

8

complete failure to object at trial. *See Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999); *see, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) (federal habeas challenge to the admission of a confession was barred because state appellate court ruled the claim was procedurally defaulted due to failure to challenge the admission of the confession at trial); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (barring review of instructional error claim because no contemporaneous objection); *Vansickel*, 166 F.3d at 957-58 (barring review of challenge to denial of peremptory challenges because no contemporaneous objection). Thus, Petitioner's failure to seek any corrective action (after the trial court informed the parties of the reports of juror intimidation) resulted in a procedural default that, unless excused, precludes federal habeas consideration of this claim.

The Court acknowledges that an exception to the procedural default bar exists if the petitioner can demonstrate either (i) cause for the default and actual prejudice as a result of the alleged violation of federal law or (ii) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. For these purposes, cause is "some objective factor external to the defense" that prevented the petitioner from complying with the state procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Martinez-Villereal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996). Here, the record shows that no external impediment prevented defense counsel from requesting further investigation or relief concerning the alleged juror intimidation. Although the trial court specifically offered the opportunity to suggest a course of action and indicated its openness to hearing from the parties, defense counsel elected not to request any type of corrective action. Therefore, there is no external cause behind Petitioner's failure to clear the state contemporaneous objection bar. Further, as the state appellate court explained, "based on the record" it could not determine whether the interaction involving the court spectators resulted in any prejudice, "especially since the trial court was informed no one felt threatened." *Rivera-Avila*, 2015 WL 1455043, *6. Thus, Petitioner has not shown any prejudice from the trial court's alleged failure to investigate reports of juror intimidation. Petitioner thus has not demonstrated anything that would provide cause to overcome the procedural default of his due process claim. Therefore, Petitioner's claim is procedurally defaulted from federal habeas review.

9

## IV. DUE PROCESS CLAIM

Even if the procedural default had been overcome, Petitioner's due process claim (that the trial court failed to investigate reports of juror intimidation) would fail on the merits.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a trial by a fair and impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The right to a jury trial is extended to state criminal trials through the Due Process Clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148–149 (1968) (holding that "the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee."). Due process requires a jury capable and willing to deliberate solely based upon the evidence presented, and a trial judge watchful to prevent prejudicial occurrences and to assess their effects if they happen. *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

A decision on whether an allegedly compromising situation requires further investigation is a matter of court and trial management usually left to the sound discretion of the trial court under state law. *People v. Williams*, 58 Cal. 4th 197, 290 (2013) ("The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court," such that "[t]he court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.") (internal quotation marks omitted). Similarly, under federal law, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. *Id.* Due process only means a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. *Id.*

Here, the trial court acted immediately and informed the parties of the reports of juror intimidation, stating:

10

> . . . I just want both counsel to be aware of, when the jury was being put back into the jury room after their lunch break today, the foreperson [JUROR NO. 54, NAME REDACTED] informed my deputy that at some point yesterday when the jury was waiting to come into the courtroom, one of the male relatives of Ms. Baker or male court people—court observers of Ms. Baker said something to the effect of—said to juror number 5, we believe, something to the effect of "You better find him guilty." [JUROR NO. 54, NAME REDACTED] told the bailiff that nobody felt threatened or the impression was [that] nobody felt threatened and that she did not feel that that was going to affect the jury's decision at all, but she was concerned about it enough to bring it to the deputy's attention. I have not done anything about it. It happened yesterday. It's reported through a third party. It's not reported by a person who supposedly heard the statement. I did not feel that there was anything that the Court could or should do about it at this point, but I did want Counsel to know that.

6RT 1424-1425. The trial court later added that it wanted to make both parties aware of the situation and inform them that it "did not feel that anything should be done at this point." 6RT 1426. The trial court stressed that it was open to suggestions by stating: ". . . if you feel differently I'm open to hearing it." 6RT 1426. Defense counsel replied, "I have to think about that. I've never been in that situation before." 6RT 1426. As the state court of appeal noted (and as the record so reflects), defense counsel did not raise the issue again, and the trial court took no further action. *Rivera-Avila*, 2015 WL 1455043, \*5.

Given that due process requires a court to prevent "prejudicial occurrences" and to determine their effects "*when* they happen," *Phillips*, 455 U.S. at 217 (emphasis added), the trial court was under no constitutional obligation to investigate further after it determined that no prejudice resulted and no further action was necessary. In addition, defense counsel did not pursue the matter further.

Clearly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time a claim of juror misconduct or bias—or in this case juror intimidation—is raised by the parties. *Tracey v. Palmateer*, 341 F.3d 1037, 1045 (9th Cir. 2003); *see also Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005) (Supreme Court cases do not require that a trial court conduct a hearing *sua sponte* whenever presented with allegations of juror bias; court should consider content of allegations, seriousness of the alleged misconduct or bias, and credibility of the source, when determining whether a hearing is required). The two most

11

relevant Supreme Court cases—*Remmer v United States*, 347 U.S. 227 (1954), and *Smith v. Phillips*, 455 U.S. 209 (1982)—do not stand for the proposition that any time evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias. *Smith* states that this "may" be the proper course, and that a hearing "is sufficient" to satisfy due process. *Tracey*, 341 F.3d at 1044 (citing *Smith*, 455 U.S. at 217, 218). *Smith* leaves open the door as to whether a hearing is always required and what else may be "sufficient" to alleviate any due process concerns. *Id.* Meanwhile, under Ninth Circuit precedent, a district court need not hold an evidentiary hearing every time there is an allegation of jury misconduct or bias. *See United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993). Rather, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source. *See id.* A hearing is required if there is a "reasonable possibility" of bias. *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003). This flexible approach is consistent with the flexible approach evinced by *Remmer* and *Smith* and therefore applicable federal habeas review of state court rulings. *See Sims*, 414 F.3d at 1155.

In the instant matter, the trial court made the decision not to conduct any further investigation on the reports of juror intimidation based on the limited content of the communication to one juror, and the reported impression from the foreperson that such a communication did not have an intimidating effect on that juror. *See* 6RT 1424-1425. Such a decision by the trial court should be entitled to deference. *Cf. Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997) (on habeas review, trial court's factual findings regarding juror fitness entitled to special deference); *see also Skilling v. United States*, 561 U.S. 358, 396 (2010) (in reviewing claims of juror bias, the deference due to trial court is "at its pinnacle"). Furthermore, the record shows that Petitioner was provided the protections of due process when the trial court offered defense counsel the opportunity to request and to possibly receive a further hearing if the defense had come to a different conclusion than the trial court regarding the absence of prejudice. No such request was made here. Under these circumstances, the trial court's failure to further investigate the reports of juror intimidation did not violate due process. Therefore, even if Petitioner's claim were not procedurally defaulted, it fails on its merits.

Similarly, the Court finds that any alleged failure by the trial court to conduct further investigation (on the reports of juror intimidation) did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 637; *see Mancuso v. Olivarez*, 292 F.3d 939, 949-50 (9th Cir. 2002) (applying *Brecht* harmless error standard to an allegation that extrajudicial considerations tainted jury) *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000). In *Mancuso*, the Ninth Circuit explained that there is no "bright line test" to determine prejudice from juror exposure to extraneous information, and a court "place[s] great weight on the nature of the extraneous information that has been introduced into deliberations." 292 F.3d at 950. The Ninth Circuit has set forth five factors for considering if extrinsic evidence is prejudicial:

> (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the extrinsic material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of . . . whether the introduction of extrinsic material affected the verdict.

*Id*. at 951-52 (quoting *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986)).

Beginning with the first factor, the record indicates that only *one* juror heard the words, (i.e., "You better find him guilty.") and that the foreperson only reported the encounter upon hearing about it from that juror. Furthermore, the communication in the present case did not contain any content related to the facts of the case, and the foreperson reported that it did not cause that juror to feel threatened. *See Mancuso*, 292 F.3d at 953 (determining prejudicial effect based on whether there was a direct and rational connection between extrinsic material and prejudicial jury conclusion, and finding in that the general assertions in that case were not prejudicial). With regard to the second and third factors, it does not appear that this information was made available or discussed with other jurors (aside from the foreperson). As to the fourth factor, although the encounter occurred before a verdict was reached, the trial court noted that the foreperson specifically relayed that "nobody felt threatened and that [the foreperson] did not feel that [the encounter] was going to affect the jury's decision at all . . . ." 6RT 1425. Thus, given the aforementioned assurance from the foreperson, the trial court concluded that it did not feel that

13

any more action needed to be taken in light of the apparent nonimpact from the communication. *See Bayramoglu*, 806 F.2d at 888 (observing that, though not determinative, a juror's assurance that he could disregard the extraneous information was "certainly significant"). Finally, given the abundance of evidence that Petitioner's truck running over the victim was not merely accidental, negligent, or in attempted self-defense, the aforementioned communication (between one juror and the victim's relatives) could not have been a determinative factor in the jury's decision to find Petitioner guilty of second degree murder (as opposed to either voluntary or involuntary murder). *See United States v. Bagnariol*, 665 F.2d 877, 889 (9th Cir. 1981) (no reversible error where evidence at trial overwhelmingly substantiated the guilt of defendant).

Accordingly, even if Petitioner's due process claim were not procedurally defaulted, it fails on its merits. Therefore, he is not entitled to relief on this claim, and it is DENIED.

## V. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's due process claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VI. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. The sole due process claim in the petition is DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated: February 9, 2018

YVONNE GONZALEZ ROGERS
United States District Judge

14